The next case today is case number 23-1021, Yvonne Martin v. Somerset County, et al. Will Attorney Hanley please step up to the podium and introduce yourself for the record? Good morning. May it please the Court. My name is Christine Hanley and I represent Yvonne Martin on behalf of the estate of her son, Paul McDonald. Attorney Hayata, may I please reserve two minutes for rebuttal? Yes, you may. Thank you. To start, I want to just briefly review the relevant timeline for this case, since we're obviously arguing about the application of the accrual of Mr. McDonald's claim. So on July 2, 2015, Paul McDonald was arrested for a probation violation and he was booked into the Somerset County Jail later that day. He had a history of suicide attempts and mental health issues, including prior attempts at suicide at the Somerset County Jail. Cheryl Needham, who was working for MedPro Associates, who was providing the mental health services at the Somerset County Jail, did evaluations of Paul on the 6th, 7th, and 8th of July, 2015. Ms. Hanley, for purposes of this argument, don't we just assume that the jail personnel were negligent? Yes. And then the question is, was the suit timely filed, given that negligence? Yes, Your Honor. I think the timing of the actions, though, bears on the argument. But those are laid out in your brief, and give us credit for having read your brief. We understand the timing. Yes, Your Honor. So we argue that for the purposes of this claim, that Mr. McDonald's claim accrued on the date of his death, as opposed to on the date that he attempted to commit suicide on July 9th. And we think that that is supported by the Washington case, which held that when the plaintiff in that case was incapacitated in between the time of the harm to the time of the death, that the accrual of the claim was the time of the death. Well, that's essentially an equitable estoppel theory. It is, but it was applied in the context of the Federal Tort Claim Act claim that was filed. Yeah, I understand that. But it's a tolling based on an equitable estoppel. Equitable tolling is a better phrase. I think it's the same rationale underlies that, yes. But that's a Ninth Circuit case, so you're asking us to apply, that same rationale to the circuit. That's correct. If I understand the argument you're making now, it's not so much that he died on a date that it's postponed until he died, but rather it's that he was incapacitated for the entirety of his life between when the injury occurred and when he died. And since he was incapacitated but not yet dead, no one could sue. That's correct, Your Honor. I didn't find that argument addressed in Judge Torrison's opinions below. Was that argument made below? In other words, that his coma precluded him from suing, so therefore we should toll the running of the statute for the period of time during which he was in a coma. Your Honor, we made the argument that we believed the date of accrual was the death, but we did not specify that the rationale was because of the coma issue. That is correct. Where does that leave us with regard to your preservation of the issue for review? I mean, it is pretty standard practice in this circuit that if a particular argument is not made before the district court, it can't be surfaced for the first time on appeal. And what you're telling us is that although the same date was claimed, you're now making a different argument in support of it than the argument you made to the district court. Yes, Your Honor. What we would contend is that the decision about the statute of limitations includes the definition of the accrual. And yes, we made a more robust explanation of that, but we would argue that it's appropriate to address that here. But we've said specifically, going back 35 years or so in Clawson against Smith, we've said specifically that when you use a different theory on appeal, even though it's a theory in support of a point made below, but it differs from the theory that you use below that the waiver principle applies. So how do we square the argument you're now making with that type of rationale? That's a good question, Your Honor. And again, I would argue that it's... It's easier to ask good questions than to give good answers. But if you're going to win this case, it better be a good answer. I understand, Your Honor. We would argue, again, that it's all tied into the same determination about the date of accrual. So what argument when you argued below that in the instant case, the combination of the injury immediately resulting in a period of unconsciousness preceding death with the necessity of the records under control of the actor to show the causal connection warrant an application of the tolling doctrine, what did you mean when you were referring to the combination of injury resulting in a period of unconsciousness preceding death? Was that a different argument than you're making now? So, Your Honor, that was perhaps a less eloquent attempt to make the argument that it's the... by what is claimed to be the negligence on the complaint, which for now is taken at its face, combined with the fact that he was immediately incapacitated until the date of his death. And he was also in custody, so the circumstances surrounding the harm that he befell to him was not public knowledge like some of the other cases that can be distinguished where it's a shooting, where it's argued that the parties should have been aware of the circumstances. So I'm a little confused. Let me take you back to my original question. Did you make the argument below before Judge Torreson that the tolling is required because he was incapacitated until his death? I believe we did when we said that it was the combination of the type of injury and him being unconscious. I should have been more specific that he was incapacitated straight through the entire duration. We think that that result is supported, as I said, by Washington and by some of the other cases by Gorelick in the First Circuit, as well as other circuits. And then we also would submit that, so what we're talking about right now is accrual. So the Washington case refers to it as accrual, even though it's applying that tolling doctrine. They don't say it's tolling. They refer to it as actual date of accrual. And then, in addition, the state of Maine tolling statute would allow tolling for the incapacity. We concede that he is not, although he was in custody, he was not imprisoned under the definition of the Maine tolling statute. So we are only addressing the incapacity, which is that he was unconscious. And we submit that that fits the definition of unable to care for oneself, as contemplated in the statute. Let me ask counsel, you've got another problem that you haven't yet addressed. Judge Torrison found, as the mental health professionals who are defendants here, that the date of accrual was not the date on which he hanged himself, to which this equitable tolling argument would apply, but was the date on which the service was rendered. It was on the day before the last date that the mental health professionals acted. What do you say to that? Your Honor, I... Because the accrual, if that's the date the cause of action accrued, even with the benefit of the equitable tolling, you may still be out of luck. Yes, Your Honor, and if I may address that past my time, I believe that that is incorrect. I believe that it was a continuing violation of failure to provide medical care that persisted entirely through the time that he exhibited the suicidal ideation on July 9th and committed suicide. And I think that that is analogous to the Seventh Circuit Heard case where the inmate was complaining of pain which persisted for the duration of the time that he was in custody. And so the claim did not accrue when he first started feeling pain, but when he was finally released from being in custody as a continuing violation theory. Let me ask you, again, one question. Had you filed this case under general tort law in Maine State Court, the statute of limitations for a tort case begins to run when the death occurs, correct? Yes. So why didn't you just file the case in what wasn't filed? I don't know if you were the attorney, but what wasn't filed in State Court? That's a great question, Your Honor, and I think because we felt the 1983 constitutional claims were the most important to address, and perhaps that's a decision we would do differently moving forward. Okay. And also I see supplemental claims were not filed in this case either, correct, under Maine tort law? Correct. Okay. Thank you. Thank you. Thank you. Attorney Ware, please step up to the podium and introduce yourself for the record. Good morning, and may it please the Court. Ben Ware on behalf of Pepele's MedPro Associates and Cheryl Needham. I'd like to start off by addressing that last question from the Court regarding the state claims. A claim for wrongful death under Maine law, a state law claim that could have been asserted here, the statute of limitations for that claim is two years. So if that supplemental claim had been included in this complaint, it would have been time barred just as the constitutional claim was. Here the District Court correctly held that the statute of limitations barred Ms. Barnes' complaint on behalf of the estate of Mr. McDonald. As Judge Torson properly found, federal law, not Maine's law of accrual, or Maine's wrongful death statute, governed the date of accrual. And applying federal law, Judge Torson correctly concluded that Mr. McDonald's constitutional claim against Ms. Needham and MedPro accrued at the latest on July 8th of 2015. Given that the complaint... Why would that be? I mean, it seems to me, under court principles as I understand them, that to have a tort-like claim, you have to have a duty. You have to have a breach of duty, which occurred on the 8th, but you also have to have harm, and the harm didn't occur until the following day at the earliest. Well, Your Honor, I think under federal law... So why would the statute run from July 8th? I think I agree with you. Accrual is a question of federal law. Right, and the date of the violation itself, the act, is the discrete act of harm. That's the constitutional violation. That is the date when accrual of the claim begins to run, not when the consequences of that claim... If your client, instead of treating this person, had gone out and planted a landmine on a public road, and the mine hadn't exploded for seven or eight years, the statute of limitations would have run at the time before the explosion occurred? It makes no sense. Your Honor, I think that's a very different fact pattern... No, it's not a different case at all, because your client is accused, and we're taking this on pleadings, but the claim is that your client, in effect, planted a landmine by telling the prison officials that this person, who it is alleged was clearly suicidal, was not suicidal and should be freed from all the usual restraints applied to suicidal prisoners. So I think the analogy is apt. Well, in that act, Your Honor, of clearing him for general population, that occurred on July 8th of 2015. And below, Ms. Martin did not raise any argument about... The argument raised below was that the cause of action accrued on Mr. McDonald's death, which was July 15th of 2015, not that it accrued at some date in the interim that we've heard about now on appeal. So, as I said before, Maine's wrongful death statute does not apply here. While that may provide Ms. Martin with standing to pursue this case on appeal, that does not govern the accrual date for the statute of limitations. On the accrual date, suppose this was a 10-day statute of limitations, and he was in a coma for 10 days. Would the statute have run? I'm not sure I understand your question, Your Honor. Sure. Let's assume there's a 10-day statute of limitations period. And let's assume that from the date of the injury onward, he was in a coma for 10 days. And he woke up on the 11th day. Is he out of luck? Well, again, I don't think that is what we're dealing with here. A hypothetical is never the same as a case. But if you want to tell me why it's different relevantly, I'll listen. But it sounds to me it's a simple question. If someone's in a coma, is the statute running? That's basically what I'm getting at. If I may answer, Your Honor. Yes. Under Maine law, there is a tolling provision, Section 853. And if there's a disability that exists when the cause of action accrues, then the tolling of the statute of limitations is tolled. Here, first, that argument was never raised below, as Judge Torson pointed out twice. There was never any argument regarding the application of Maine's tolling statute. And at the time that the claim against my clients accrued, Mr. McDonald was not mentally ill as defined by Maine law. You mean when he was in a coma? Before he went into a coma, he had the knowledge of the claim against my clients. Okay. So then we're back to Judge Salyer's question whether you could sue without injury. Our position would be, Your Honor, that his injury and his claim against my clients accrued before he attempted suicide. Thank you. Thank you, Your Honors. Attorney Wall, please step up to the podium and introduce yourself for the record, please. Thank you. And may it please the Court. My name is John Wall, and I represent Defendants Medour and Mounier in this case. By and large, Your Honors, we intend to rely on our briefs. I just wanted to address a couple of points that are prompted from the reply brief that was filed. First, as we argued in our brief, the plaintiff did not file an opposition to our motion for judgment on the pleadings. And in the reply brief, the plaintiff does not contest this point. Therefore, we don't think it's necessary for the Court to resolve any of these issues with regard to our clients. Counsel, here's the situation we have. It is true that the failure to file a written opposition probably could have justified the district judge, in effect, in deciding the issue on the basis that there was no objection. But that's not what the district court did. The district court, as I think was within its discretion, elected to treat the motion for judgment on the pleadings as opposed. And that's the decision we're reviewing. Are you saying the district court abused its discretion in treating the motion in that fashion? Because if so, that's not an argument that you made in your brief. No, Your Honor. Or are you saying it should make no difference to us that the district court led the parties to believe that it considered the motion to be opposed? No, Your Honor. What we're suggesting is that it would be a sufficient, independent, separate basis for this court to affirm the judgment in favor of our clients. Obviously, it's apparent from the record that there was no opposition filed. And understanding that the district court judge approached the decision from the standpoint of reaching the merits of the arguments that were raised, we believe it would be sufficient, based upon this record, for the court to affirm on an alternative grounds, which is based upon waiver. But it hardly seems equitable. Because if the district court had raised that issue with the plaintiff in the district court, the obvious answer would have been the plaintiff would have said, Oh, Your Honor, may I have permission to file an opposition late? All right? But the plaintiff was never afforded that opportunity because the district court, in effect, said, I don't need an opposition here. I'm going to treat the motion as unopposed. And if that act is within the district court's discretion, shouldn't our review be of the district court's action? Well, Your Honor, that's why we argued the merits of this, as well as raising the point that there's a separate basis for the court to affirm. Obviously, we addressed this point, as well as the merits. Obviously, we briefed the merits to the district court below, and we're simply indicating this is a separate basis. Did you raise the failure to file an opposition to the district court? It wasn't necessary, Your Honor, because there was no opposition. I didn't ask you if it was necessary. I asked you if you raised it because I haven't been able to find any indication that you did. Well, we had no opportunity to do so, Your Honor, because there was no opposition filed. So we didn't have any reply to file with regard to the district court. Well, but you could have moved for judgment by default or judgment because there was no opposition, but you never took that position from the district court, not that I can tell you. Well, having prevailed on the merits, we decided to simply stand on the judgment that was in our favor, unless the court has any other questions. Let me ask you one question similar to one posed to the co-counsel. Let's assume the sedent had been in a coma and died, let's say, a week ago and filed the same lawsuit. It would still be time-barred? Yes, Your Honor. Yes, Your Honor. And the reason for that is because the harm that we're dealing with is a constitutional violation. This Court has held in the Moran-Vega case, which is 537F3-14, that the accrual occurs when the party is deemed to know of the violation at the time the acts occurred, not at the point when a subsequent harmful consequence occurs. But you can't bring a lawsuit without injury in fact. There's no standing. Well, the fact that he's not being treated for a mental health condition, which is what the allegation is, is itself a constitutional violation. It is a harm, and that is the thing that triggers the accrual of his claim. The fact that he has additional acts that he created self-harm is an additional consequence of that, but it's still the constitutional harm that triggers the accrual. Is Moran-Vega cited in your brief? Actually, that case is cited by the plaintiff in the plaintiff's opposition to. . . So, no, no, Your Honor. It's not cited in our brief. Then you better send us a 28-J letter on it. Thank you, Your Honor. Enlist us any further, Your Honor? Thank you. Attorney Marchese, please step up to the podium and reintroduce yourself for the record. Yes, good morning, Your Honors. Peter Marchese on behalf of the remaining defendants. The roster is so long I'd consume all of my three minutes if I listed them all. I just really want to pick up on one point here, and then I'll address any questions that the Court may have. It seems that the issue that we're debating is what is meant by the term injury in the context of accrual. Is it the ultimate harm that was caused, or is it something else? And as I read the case law that's cited in all of the parties' briefs, the Federal case law that governs the definition of accrual, it is the act that causes the harm. And as Attorney Wall pointed out, in the specific context of Section 1983 constitutional cases . . . seven years from now, when would the statute start to run? If planting the landmine were a constitutional violation, as the allegations in this case, if true, would be, it would start to run immediately. And so if people who were killed when it exploded seven years later would be out of luck? They would, in that circumstance, because the constitutional injury occurs when the constitutional violation takes place. And it is entirely possible to bring a Section 1983 claim without having suffered a physical or a mental injury. It is the violation itself that is redressable under the law. And because of that, when that act occurs, that is the injury, and that is when the cause of action accrues. So when we go back to the complaint and we look at the dates that are recited in the complaint for the alleged acts in question that were allegedly unconstitutional, it is those dates that govern. Let me ask you here. The tort cause of action is two years under Maine law.  And it would start running the day the deceased passed away? That is correct. Okay. And for 1983, the borrowed limitation is six years? The borrowed limitation, but not the accrual of the limitation. Okay. But the borrowed limitation is six years. Yes. So what I would suspect in this case would be that the two years passed, you can't file under that, so that's why you try to get to six years, but by coming to federal court, then you ran into this, well, length of ran into the problem of those specific eight days. That's exactly right. And so the difference is that under the Tort Claims Act, we're not dealing with constitutional violations. So, and I think this is what Judge Selya was alluding to earlier, and the law school definition of negligence is the act and the harm and the causation, and you have to have damages or somebody can be negligent. But a constitutional violation is. Is itself. It sounds like a tort. It's a horse of a different color. It is a constitutional tort, and the violation itself is the harm, is the damage. Okay. Thank you. Thank you. Thank you, Mr. MacKenzie. Attorney Hanley, you have a two-minute rebuttal. Thank you. Can you reintroduce yourself for the record, please? Can you reintroduce yourself for the record? Yes. Attorney Hanley for Yvonne Martin. Just briefly, I think the end of the previous argument is, I think, sums up where we disagree. And our argument is that the harm befell Paul when he had the combined action of failing to be treated for his mental health and then failing to be supervised, had suicidal ideation without being monitored and acted on it. So his harm occurred at that point. And if the harm occurred at that point, then the principles outlined in Wallace would allow the accrual to be deemed to have occurred on the date of his death. Thank you, Ms. Hanley. Thank you. That concludes arguments in this case.